```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


MARK STEVEN TOMEY, SR.       *
                             *
v.                           *    Civil Action No. WMN-15-942
                             *
NORA ELLEN TOMEY et al.      *
                             *
*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *
```

## MEMORANDUM

On April 1, 2015, Plaintiff Mark Steven Tomey, Sr., proceeding pro se, filed a fifty-page Complaint against his sister, Nora Ellen Tomey, and thirteen other individuals or entities. As summarized by Plaintiff, he filed this Complaint against these named Defendants "for their roles in the conspiracy to defraud him from his real and personal property during the actions taken to grab and take control" of his mother, Margaret Helen Tomey, and her assets. ECF No. 1 at 1. Although the Complaint does not contain any specific counts and the precise nature of his claims against each Defendant is not entirely clear, he alleges various violations of his constitutional rights; he quotes 42 U.S.C. § 1983, id. at 17; and he then references that statute throughout his Complaint. The Court, therefore, will assume that the claims against Defendants are § 1983 claims.

The principle allegations in the Complaint are as follows.[1] Plaintiff's parents built a home on Green Glade Road in Jacksonville, Maryland, which was completed in 1964. After Plaintiff was married, he and his wife, Carmen Tomey, continued to live in that house for some time before moving to their own home and Plaintiff's mother developed a strong connection with Plaintiff's children. Plaintiff's father also bought some "raw land" in Bedford, Pennsylvania, with the thought of building a cabin there that would eventually go to Plaintiff's sons. Plaintiff's father died in 1997.

In the spring of 2004, Plaintiff's mother stated that she wished to add Plaintiff's name to the deed of the Bedford property and also decided to draft a will. She also expressed at that time her desire to leave everything to Plaintiff because his sister Nora was well off financially and had no children to receive an inheritance. His mother met with an attorney, Perry Lericous, who agreed to draw up a will and medical directives. Lericous advised her to not put Plaintiff's name on the deed to

---

[1] The precise date of many of the events referenced in the Complaint are not provided, nor are the particular offices, titles, or roles of some of the Defendants. Some of these holes are filled by allegations in a similar case filed by Plaintiff and his wife in 2009, Tomey v. Baltimore County, Civ. No. L-09-390 (D. Md.), which will be discussed below. Particularly helpful is a "Timeline for Margaret Helen Tomey's Removal," id., ECF No. 1-2, which Plaintiff attached to the previous complaint.

the Green Glade Road home, however, "so that no one could force her into a retirement home against her will." ECF No. 1 at 3.

Shortly thereafter, Plaintiff and his mother had a conversation in which she stated that she wanted Plaintiff and his wife to stay in the Green Glade Road home after she passed and wanted to change the deed to reflect that decision. Because Lericous had indicated disagreement with that decision, she went to another attorney, selected at random, to do a "deed alteration." Id. at 4. She later returned to Lericous's office and signed the will and the medical directives. In the summer of 2004, Plaintiff's mother was diagnosed with "the very beginnings of Alzheimer's disease."

During all this time, even well before the death of their father in 1997, there was considerable tension between Plaintiff and his sister. Id. at 2. The tension continued to escalate until sometime in 2005, when officials from Defendant Baltimore County Department of Social Services (DSS) began visits to the Green Glade Road home at Nora Tomey's request. Plaintiff's mother refused them admittance on their first attempted visit but they later returned "and began an almost terrorist like harassment and invasion of privacy" grabbing Plaintiff's mother, yanking her out of a chair and pulling her into a back room for an "evaluation." Id. at 6.

After this encounter, Defendant DSS placed Defendant Andrew Goeb, an adult protective services caseworker, on the case and he, in turn, "brought out zoning to aid in his investigation." Id.  Plaintiff believes that Goeb generated zoning complaints against Plaintiff's mother and, along with Defendant Baltimore County Code Enforcement, "began a continuing harassment of the family, violating their privacy and civil right to sanctity of the home."  Defendant Rebecca Daniels, who the Court will assume is a Code Enforcement Officer, came to the house on several occasions.  On one occasion in early 2006, it is alleged that she took a picture through a bathroom window of Carmen Tomey coming out of the shower, topless.

In response to these events, Plaintiff contacted Defendant Baltimore County Executive's Office on January 18, 2006.  He spoke with Defendant Sharon Paul in that office, but she simply repeated to him what DSS had told her.  Plaintiff became angry, directed an expletive toward Ms. Paul, and told her that if anyone else came onto the property, "he would be forced to 'STOP.'"  Id. at 7.  In reporting the telephone conversation with Plaintiff to Defendant Sharon Rose, an employee of DSS, Ms. Paul is alleged to have misquoted him as saying "DROP" instead of "STOP."  Because that miscommunication was conveyed to the Baltimore County Police, Plaintiff was labeled a "potential threat" to the county.  Id.

4

On February 15, 2006, Plaintiff was served with guardianship papers at his place of employment and, at the same time, police went to the Green Glade Road house and informed Carmen Tomey that DSS was on the way to pick up Plaintiff's mother for evaluation. Defendant Goeb and Defendant Daniels arrived and Plaintiff's mother was taken away. During that incident, Carmen Tomey and Goeb had a verbal dispute concerning whether he was permitted to enter the house and, by the end of the encounter, Carmen was taken to the police station and held for six hours. Plaintiff alleges that the police wrenched Carmen's shoulder in the process of taking her into custody.

Guardianship hearings were held before Defendant Judge Ruth Jakubowski on May 8, 2006, and June 8, 2006. Defendant Bambi Glenn, an attorney, was appointed as an advocate for Plaintiff's mother. Plaintiff takes issue with the appointment of Defendant Glenn and also the manner in which Judge Jakubowski conducted the hearings. On June 21, 2006, Judge Jakubowski appointed Nora Tomey as the guardian of Plaintiff's mother and Defendant Jerry Lambdin as the guardian of her property. On September 19, 2006, Judge Jakubowski granted a motion filed by Lambdin to retain Defendant Andrew Fury as counsel to investigate and recover any assets due to Plaintiff's mother. Plaintiff believes that all of these decisions were improper as well and in violation of relevant law.

On February 16, 2007, Defendant Fury filed a complaint against Plaintiff in the Circuit Court for Baltimore County to recover certain assets, including the Green Glade Road home. Defendant Judge Carol E. Smith presided over that suit. According to Plaintiff, Judge Smith violated Plaintiff's due process rights by, inter alia, denying his request for a continuance and thus forcing him to proceed pro se and by permitting Fury to admit into evidence a deed that had not been disclosed to Plaintiff prior to the proceeding.  At the conclusion of those proceedings, Judge Smith issued an order requiring Plaintiff and his wife to convey certain property to Plaintiff's mother, including two IRA accounts and the Green Glade Road property.  As a result of this order and Judge Smith's refusal to stay the order pending appeal, Plaintiff was evicted from the Green Glade Road house with only four days notice.  Because of that short notice, Plaintiff was unable to remove his personal property and Plaintiff asserts that much of it was stolen, damaged, or vandalized.  Plaintiff unsuccessfully appealed Judge Smith's rulings.  He petitioned to the United States Supreme Court for certiorari and that petition was denied.

Plaintiff further alleges that, while Nora served as his mother's legal guardian, she made poor decisions that "helped blow through [his mother's] assets quickly and needlessly." Id.

at 11.  Furthermore, Plaintiff contends that these decisions were inconsistent with his mother's expressed desire regarding her health care and end of life issues.  Plaintiff's mother died in April 2011.  After his mother's death, Plaintiff filed in the Orphans' Court for Baltimore County a petition for an accounting of the assets in her estate.  While that petition was granted, Plaintiff alleges he received untimely notice of the ruling on that accounting so that when he attempted to appeal that ruling to the Circuit Court, Judge Fader II found his appeal to be untimely.  Plaintiff unsuccessfully appealed that ruling as well and, based upon this series of events, concludes that "the Baltimore County Circuit Court system has been duplicitous in continuing the conspiracy to defraud [Plaintiff of] his property and subsequent coverups."  Id. at 16.

   Based upon this series of events, Plaintiff and Carmen Tomey filed a suit in this Court on February 13, 2009, against several of the same Defendants named in this suit: Baltimore County Executive Office, DSS, Daniels, and Goeb.  Tomey v. Baltimore County, Civ. No. L-09-390 (D. Md.).  That Complaint contained a similar claim for conspiracy to gain control of Margaret Tomey and her property, as well as a claim for slander and a claim for a civil rights violation focusing on the February 2006 detention of Carmen Tomey.  On March 9, 2010, Judge Benson Legg dismissed all but the civil rights claim

7

against Goeb and also allowed the Tomeys to amend their complaint to bring in claims against the police officers involved in that detention.  Id., ECF Nos. 27, 28.  On June 15, 2011, after the discovery period ended, Judge Legg dismissed the entire action based upon the Tomeys' "utter failure to participate in their case" and "blatant disregard of the Court's orders."  Id., ECF No. 59 at 6.  Judge Legg also noted that the Tomeys had attempted through numerous letters sent to the Court to interject the same allegations that are presented in the instant Complaint.  These letters alleged: "a lengthy family history of infighting over the care of Margaret Tomey and the distribution of her assets," "myriad violations of elder care and guardianship law," and "a broad conspiracy among the police, [DSS], and the Maryland state courts to violate the Tomeys' civil rights . . . ."  Id. at 3.  Because Judge Legg dismissed the case without allowing the Tomeys to present it to a jury, Plaintiff contends that he lost "the right to jurisdiction by violating the law and due process, ie, the plaintiff's rights for a jury to rule, which then deems said ruling to be a 'void judgment.'"  ECF No. 68 at 9.  The Tomeys appealed Judge Legg's ruling dismissing the case and the Court of Appeals for the Fourth Circuit dismissed that appeal.

All of the Defendants in this action[2] have now filed motions to dismiss, identifying a number of grounds upon which Plaintiff's claims against them must fail.  ECF No. 50 (filed by Judge Jakubowski, Judge Smith, and the Circuit Court for Baltimore County); ECF No. 54 (filed by DSS, Goeb and Rose); ECF No. 56 (filed by Daniels, Paul, the Baltimore County Executive Office, and Baltimore County Code Enforcement); ECF No. 58 (filed by Lambdin and Fury); ECF No. 62 (filed by Glenn).  Defendants assert that Plaintiff's claims are barred by one or more of the following: absolute judicial immunity, Eleventh Amendment immunity, the Rooker-Feldman Doctrine, res judicata, and the applicable statute of limitations.  Several Defendants also argue that, were the claims not subject to these bars, the allegations in the Complaint would, nonetheless, fail to support the claims asserted against them.  Plaintiff has now opposed each of these motions.

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

---

[2] Defendant Nora Tomey has yet to be served in this action.  On August 6, 2015, Plaintiff filed a request that she be served by the U.S. Marshals with fees for that service waived.  ECF No. 64.  That request will be denied as the claims against Nora Tomey must fail for the same reasons as the claims against the other Defendants.

556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Such determination is a "context-specific task," Iqbal, 556 U.S. at 679, in which the factual allegations of the complaint must be examined to assess whether they are sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "[A] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Such deference, however, is not accorded to labels and legal conclusions and bare assertions devoid of further factual enhancement. Iqbal, 556 U.S. at 678.

The Court finds that most, if not all, of the asserted grounds for dismissal asserted by Defendants are valid. Perhaps the most obvious ground for dismissal of most if not all Defendants is the bar presented by the applicable statute of limitations. Because Section 1983 does not contain a statute of limitations, courts borrow the statute of limitations from the most analogous state-law cause of action to determine the timely filing of a § 1983 claim. Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014). For § 1983 suits, that cause of action is a personal-injury suit, Owens v. Okure, 488 U.S. 235, 249-50 (1989), and Maryland law affords

10

plaintiffs three years to file such an action.  Md. Code Ann., Cts. & Jud. Proc. § 5-101.  Thus, a three-year limitations period applies to Plaintiff's § 1983 claims.

While Plaintiff provides few precise dates for events in his Complaint, all of the alleged violative conduct clearly took place well over three years ago.[3]  All of the conduct attributed to Defendants DSS, the Executive's Office, Daniels, Paul, Rose and Goeb occurred in 2006 and 2007.  While some aspects of the judicial proceedings may have extended a few years further and involved some of the Defendants beyond that time frame, the final judgment in the litigation over Plaintiff's mother's property was entered on March 12, 2009, see ECF No. 58-4 (docket report, Tomey v. Tomey, Case No. 03C07001814 (Cir. Ct. Balt. Co.)) and the last ministerial act in the guardianship proceedings was committed on March 30, 2012, with Defendant Lambdin's filing of the Final Fiduciary Report.  See ECF No. 58-3 (docket report, In re Margaret S. Tomey, Case No. 03T06000026 (Cir. Ct. Balt. Co.)).

Ordinarily, a motion to dismiss should not be granted on a statute of limitations defense unless it is clear from the facts and allegations on the face of the complaint that the statute of

---

[3] That Plaintiff's claims are time barred is particularly evidenced by the fact that Plaintiff filed a lawsuit based upon most of these same events more than six years prior to the filing of this lawsuit.

11

limitations has run.  Green v. Pro Football, Inc., 31 F. Supp. 3d 714, 722 (D. Md. 2014).  In this Complaint, unlike his previously filed complaint in this Court, Plaintiff has avoided referencing the dates on which the alleged tortious conduct was committed.  The Court, however, in ruling on a motion to dismiss under Rule 12(b)(6) can consider facts and documents subject to judicial notice, which include public records.  Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009).  The dockets of the state court proceedings are such public records. More significantly, the Court can consider representations made by Plaintiff and submitted to this Court in the prior litigation - representations which do include the relevant dates.  See Schultz v. Braga, 290 F. Supp. 2d 637, 651 n.8 (D. Md. 2003) (noting that courts can consider "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint").  In opposing the motions to dismiss, Plaintiff makes no claim that any of the challenged conduct occurred within the three year limitations period.

Instead, as his only argument related to limitations,[4] Plaintiff posits that because the state court judgments were

---

[4] In the last opposition that Plaintiff filed, that being his Opposition to Defendant Glenn's Motion, it would appear that Plaintiff is attempting to rely on the "continuing tort doctrine," as he suggests that "the fact that there is an

produced by a "kangaroo court" that violated his due process rights, they are "'void judgement[s]' without any limitation on rehashing the issues or any time frame creating a deadline to do so." ECF No. 65 at 14. As noted above, Plaintiff also considers Judge Legg's dismissal of his previous suit in this Court to be a "void judgment."

As a general principle of Maryland law, a void judgment "may be assailed at all times, and in all proceedings by which it is sought to be enforced." State v. Ambrose, 62 A.2d 359, 366 (Md. 1948) (citing Hanley v. Donoghue, 59 Md. 239, 243-44 (1883)). The general rule applies to judgments that are "absolutely void," that is, judgments that were issued by courts that did not have jurisdiction over the parties or subject matter. Ambrose, 62 A.2d at 366. Void judgments are contrasted with judgments that are simply "voidable," that is, judgments that are "merely erroneous because of some irregularity in the mode of proceeding, or error on the part of the Court in the

---

ongoing conspiracy negates any argument of the issues raised in this case having been already decided, ie res judicata, and any issues that there being a time limit, ie statute of limitations, that is invokable." ECF No. 68 at 7. It is true that the "continuing tort doctrine," can toll the statute of limitations in cases where there are continuous violations. Bacon v. Arey, 40 A.3d 435, 465 (Md. Ct. Spec. App. 2012). The doctrine, however, requires that some tortious act, not simply the continuing ill effects of prior tortious acts, falls within the limitation period. Id. Here, there is no tortious act identified that falls within the three years prior to the filing of this suit.

application of the law to the particular case, and for which the party aggrieved must seek a remedy by appeal or writ of error." Hanley, 59 Md. at 243-44.

Plaintiff's reliance on the "void judgment" rule to avoid limitations is unavailing for a number of reasons. First, unlike the cases relied upon by Plaintiff, this is not an action directly challenging a previous court order. Instead, Plaintiff is bringing a tort action to collect monetary damages based on an alleged conspiracy to deprive him of his rights. See ECF No. 61 at 14. He acknowledges that the "issue of this conspiracy by the named defendants was not tried in a state court." Id. at 16. In contrast to the instant suit, the cases relied upon by Plaintiff for the proposition that "[a]ny motion for relief from a void judgment is timely regardless of when it is filed,"[5] V.T.A., Inc. v. Airco, Inc., 597 F.2d 220 (10th Cir. 1979) and Orner v. Shalala, 30 F.3d 1307 (10th Cir. 1994),[6] are cases addressing the timeliness of Rule 60(b) motions, a question not at issue here. Significantly, the Tenth Circuit in V.T.A. specifically noted that "[a] judgement is not void merely because it is or may be erroneous," and "[i]f found at all, voidness usually arises for lack of subject matter jurisdiction

---

[5] ECF No. 61 at 10.

[6] Plaintiff cited this case simply as "Omer v. Shala, supra@1308." Id. The Court assumes Plaintiff intended to cite Orner v. Shalala.

14

or jurisdiction over the parties." 597 F.2d at 224. Furthermore, the court cautioned, "[i]n the interest of finality, the concept of setting aside a judgment on voidness grounds is narrowly restricted." Id. at 225.

Here, Plaintiff does not argue that the Circuit Court for Baltimore County lacked jurisdiction over the subject matter of the underlying suits. For the most part, he simply alleges that the courts improperly conducted the proceedings and it is questionable, even if Plaintiff were able to prove those allegations, that the errors would rise to a level that would render the judgments void.

To the extent, however, that Plaintiff is directly challenging the state court judgments, this Court would have no jurisdiction over that challenge under the Rooker-Feldman doctrine. That doctrine derives its name from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and Dist. of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983), and, as the Supreme Court has explained "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (emphasis added).

15

For example, in the Rooker case, the Court ruled the plaintiff's request that the federal district court declare null and void state-court judgments against him was not within the subject-matter jurisdiction of the district court. "To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original." 263 U.S. at 416. Similarly, in Feldman, the Court concluded the federal district court had no jurisdiction to consider the plaintiff's request to review the merits of the adjudication by the District of Columbia Court of Appeals on plaintiff's application for admission to the D.C. bar. 460 U.S. at 486-87.

While Plaintiff baldly repeats that he is not a disgruntled state court loser, to the extent he is challenging the state court judgments, that is precisely what he is, and this Court has no appellate jurisdiction over those challenges. To the extent he is asserting a tort claim independent of those judgments, his claims are barred by limitations. Accordingly, all of Plaintiff's claims against all Defendants will be dismissed.

A separate order will issue.

                                                    _____/s/_____
                                                  William M. Nickerson
                                                  Senior United States District Judge

DATED: October 7, 2015